UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOURDES MENDOZA, Plaintiff, | |
| v. | **OPINION AND ORDER** |
| NORTHWELL HEALTH, INC. d/b/a LENOX HILL HOSPITAL, ELEONORA SHAPIRO, SEAN KEARNEY, and KIMBERLY JAWIN, Defendants. | 23 CV 6091 (VB) |

Briccetti, J.:

Plaintiff Lourdes Mendoza brings this action against her former employer, Northwell Health, Inc. ("Northwell"),[1] and individual defendants Eleonora Shapiro, Sean Kearney, and Kimberly Jawin. Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"); the Age Discrimination in Employment Act of 1967 ("ADEA"); the New York State Human Rights Law ("NYSHRL"); the New York City Human Rights Law ("NYCHRL"); and the New York Labor Law ("NYLL").

Now pending is defendants' motion for summary judgment. (Doc. #46).

For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

[1] Defendants assert Northwell Health, Inc., is not a proper defendant and Lenox Hill Hospital is not a "d/b/a" of Northwell Hospital. (Doc. #47 at n.1). Defendants do not request any relief from this alleged error.

**BACKGROUND**

The parties have submitted briefs, declarations with exhibits, and statements of material facts pursuant to Local Civil Rule 56.1. These submissions reflect the following factual background.

Lenox Hill Hospital ("Lenox Hill") is a full-service hospital owned and operated by defendant Northwell. Plaintiff began working as a Registered Nurse ("RN") at Lenox Hill in 1990. In 2014, plaintiff began working primarily in the Ambulatory Surgery Unit ("ASU") at Lenox Hill. Patients in the ASU receive short-term care such as simple surgery, and are typically discharged on the same day.

The functions of the ASU were divided into three categories: (i) pre-operative work ("Pre-Op"); (ii) recovery or post-operative work ("Post-Op"); and (iii) the Hybrid or the Cardio-Thoracic Unit. (Doc. #50 at ¶ 4). Pre-Op work focused on preparing patients for their operations, whereas Post-Op work focused on handling patients as they came out of surgery. Post-Op work was generally more physically taxing than Pre-Op work, as RNs working in Post-Op were often tasked with heavy lifting. From 2014 through 2018, plaintiff worked throughout the ASU, performing both Pre-Op and Post-Op assignments.

In 2018, plaintiff suffered a herniated disc and took an approximately nine-month leave of absence. After returning from her leave of absence, plaintiff resumed her prior responsibilities, including Post-Op assignments. However, shortly after her return, plaintiff found she could not perform a variety of tasks, such as lifting patients and equipment, or being on her feet for extended periods of time. (Doc. #65 at ¶ 16). Accordingly, plaintiff sought Pre-Op assignments more frequently. (Id.). At this point, plaintiff had not requested any

accommodation, but merely volunteered for Pre-Op assignments because she felt they were better for her in light of her condition. (Doc. #49-4 at Tr. 112–13).

In March 2020, the onset of the COVID-19 pandemic disrupted operations in the ASU. ASU RNs were reassigned to different areas of the hospital and were expected to provide bedside care to patients. Plaintiff believed her back condition prevented her from providing bedside care, so she obtained a note from her doctor (the "March 2020 note"). (Doc. #65 at ¶ 19). The March 2020 note explained:

> [Plaintiff] has herniated disc of lumbar spine and suffers from chronic back pain. She cannot stand on her feet for more than 10 minutes and she cannot lift weights more than 5 lbs. She should avoid repeated bending. She is still on various treatments for her back problem.

(Doc. #49-13). Plaintiff provided this note to a nurse in Employee Health Services ("EHS") (Doc. #49-4 at Tr. 126–27), which is the department at Northwell that liaises with employees and their medical providers concerning any paperwork that may be necessary for an accommodation. As a result, plaintiff was assigned to a "COVID Liaison" position, in which she was responsible for communicating with the families of COVID-19 patients about their conditions.

Plaintiff continued working in this COVID Liaison position until COVID-19 restrictions eased in approximately August 2020. (Docs. ##49-4 at Tr. 139–42; 72-1 at ¶ 12). At that time, plaintiff spoke with her then-supervisor, Enrique Hernandez, who permitted her to work more exclusively in the Pre-Op area. (Doc. #49-4 at Tr. 139–43, 147). Plaintiff did not submit any formal application to work exclusively in Pre-Op, nor did she submit the March 2020 note to Hernandez, as she believed EHS already had it. (Id. at Tr. 147–48). Plaintiff testified her understanding of this arrangement was that she would no longer need to volunteer for Pre-Op work as she had done before COVID because she now had a more formal assignment to Pre-Op. (Id. at Tr. 147).

In November 2020, defendant Jawin was hired as Nurse Manager in the ASU and became plaintiff's new direct supervisor. Jawin reported to defendant Kearney, the Director of Patient Services for the Perioperative Department. Jawin and Kearney both expected ASU RNs working in Pre-Op to "float" and move to Post-Op as patients transitioned into surgery. (Doc. #50 at ¶¶ 15–16). Accordingly, Jawin would periodically ask plaintiff and other RNs to take assignments outside of Pre-Op. (Id.).

In March 2021, Jawin directed plaintiff to work in Post-Op and plaintiff refused on the basis of her back condition. Jawin offered to work beside plaintiff in case any issues arose, but plaintiff continued to refuse. According to plaintiff, Jawin then became irate and yelled at plaintiff. (Doc. #49-4 at Tr. 193–94). Jawin ultimately instructed plaintiff to go to EHS if she could not work in Post-Op.

Plaintiff went to EHS and requested a "light duty"[2] accommodation under which she would work only in Pre-Op and no longer have to "float" to Post-Op. (Doc. #49-4 at Tr. 195–200). EHS told plaintiff the March 2020 note needed to be updated to support this request. Accordingly, plaintiff obtained a new doctor's note dated March 23, 2021 (the "March 2021 note"). (Doc. #65 at ¶ 54). The March 2021 note prohibited plaintiff from carrying more than fifteen pounds, as well as from squatting, bending, or climbing. (Doc. #49-16 at ECF 2).[3] The March 2021 note further stated plaintiff could not stand for more than ten minutes at a time or sit for more than twenty minutes at a time. (Id.).

---

[2] The parties refer to plaintiff's request to work only in Pre-Op and no longer have to float to Post-Op as a "light duty" accommodation. (See, e.g., Docs. ##47 at 1; 61 at 20). The Court does the same for consistency's sake.

[3] "ECF _____" refers to page numbers automatically assigned by the Court's Electronic Case Filing System.

The March 2021 note also contained plainly contradictory information. First, it stated plaintiff could work for eight hours per day and five days per week, but also that plaintiff could work for eight hours per day only two days per week. (Doc. #49-16 at ECF 2–3). Second, it stated that these restrictions would be necessary through both September 8, 2021, and September 25, 2021. (Id.).

Plaintiff's request and the accompanying March 2021 note were reviewed by Human Resources Senior Specialist, Nicole Auletta. Auletta reached out to Jawin and Kearney to get their views on whether plaintiff's requested accommodation was possible. (Doc. #65 at ¶ 58). Jawin and Kearney did not believe plaintiff could be accommodated because plaintiff's restrictions prevented her from performing the essential functions of an RN, including providing patient care. (Doc. #50 at ¶ 26; Doc. #65 at ¶ 59).

On April 4, 2021, Jawin emailed plaintiff denying her light duty accommodation request. (Doc. #49-17). Jawin's email explained:

> I conversed with Sean [Kearney] just now and Peri-Op is unable to accommodate the light duty requirements your doctor is requesting. Therefore tomorrow, you will not be able to report to work. I would call MyAbsence to start the leave of absence hours you were approved for to ensure pay and also reach out to HR to see what they can do to possibly provide some work accommodations according to what the doctor's note described. I'm sorry this is the result the doctor's note brought us to, but we do not want you to possibly become hurt worse in any way.

(Id.). After seeing this email, plaintiff called her union, the New York Professional Nurses Union ("NYPNU"), and applied for and was approved for a leave of absence. Plaintiff began her leave of absence on April 5, 2021.

Lenox Hill personnel communicated with plaintiff during her leave of absence to obtain clarifying or additional medical documentation in hopes of finding a potential accommodation. On May 17, 2021, Auletta sent plaintiff a letter explaining Lenox Hill's consideration of her

accommodation request. (Doc. #49-18). In relevant part, the letter explained Lenox Hill's reasoning that the restrictions detailed in the March 2021 note "preclude[d] [plaintiff] from performing [her] essential nursing duties and providing patient care." (Id. at ECF 2). Auletta explained:

> [A]lthough you may be able to interview patients pre operatively, your position as a staff RN requires that you provide direct care requiring you to be able, among other things, to ambulate patients post-surgery to assess their status, assist in lifting patients out of bed and up in a chair as per surgical team orders, and immediately respond to emergency situations, inclusive of providing CPR and other life support functions.

(Id.). Auletta also identified the contradictions in the March 2021 note regarding the number of hours and days plaintiff could work and the duration of the restrictions. (Id.). Accordingly, Auletta requested plaintiff's consent to have EHS contact her physician to obtain more definitive information so that Lenox Hill could consider other potential reasonable accommodations. (Id. at ECF 2–3). The May 17 letter also required plaintiff to fill out and return a consent form by May 24, 2021. (Id. at ECF 3).

Plaintiff did not provide consent as Auletta requested, and called another Northwell employee, Caroline Zhang, to object that she was not given sufficient time to return the consent. (Doc. #65 at ¶ 64). On May 26, 2021, Zhang sent plaintiff a letter following up on their telephone conversation and outlining next steps. (Doc. #49-20). As relevant here, Zhang explained that the conversation between EHS and plaintiff's physician was "needed solely to clear up inconsistencies and discrepancies in the medical documentation previously submitted and to ascertain the duration of the restrictions imposed so as to enable the Hospital to consider what workplace accommodations, if any, can be made." (Id. at ECF 2). Plaintiff ultimately gave consent for Lenox Hill to communicate with her physician. (Doc. #65 at ¶ 66).

On June 10, 2021, Auletta sent plaintiff another letter explaining EHS had been unable to reach her physician. (Doc. #49-22). The letter served to give plaintiff the opportunity to contact her physician so that Lenox Hill could "determine what, if any, reasonable accommodations may be available to facilitate your return to work." (Id.).

On June 14, 2021, plaintiff's physician submitted an updated note stating:

> Patient is cleared to work in the pre-op area to interview patients. She may stand or sit to her discretion according to her comfort level. She may lift up to 5-10 lbs.

(Doc. #49-24).

On June 24, 2021, Auletta sent plaintiff a letter again explaining Lenox Hill could not accommodate her light duty request. (Doc. #49-25). First, Auletta explained that the June 14 doctor's note failed to address the inconsistencies in the March 2021 note regarding the scope and duration of the requested accommodation. Auletta further explained, consistent with her prior letter of May 17, 2021, that plaintiff's light duty request nevertheless imposed restrictions which would preclude her from performing the "essential duties" of her job as an RN, such as providing direct patient care. (Id.; see also Doc. #49-18 at ECF 2). Further, "due to the inconsistencies and incompleteness of the documentation," Lenox Hill was unable to determine what, if any, workplace accommodations could be made for plaintiff, such as a temporary transitional assignment. (Doc. #49-25).

Plaintiff did not communicate with anyone from Lenox Hill again after receiving Auletta's June 24, 2021, letter. Lenox Hill offered plaintiff a liaison position it thought might be suitable for her. This position involved interviewing patients. Plaintiff felt she could not accept this liaison position because it required her to stand too much. Plaintiff was approved for long-term disability benefits as of October 2, 2021.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 25, 2022. (Doc. #49-28). Plaintiff ultimately resigned on May 24, 2023, while on leave of absence.

Plaintiff commenced this action on April 21, 2023, in the Supreme Court of the State of New York, New York County. On July 14, 2023, defendants removed the case to this Court based on federal question jurisdiction.

**DISCUSSION**

I. Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986).[4]

A fact is material when it "might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

If the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011). "[T]he mere existence of a scintilla of evidence" supporting the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for it. Dawson v. Cnty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes all facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor, on the issue on which summary judgment is sought, summary judgment is improper. Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

II. Title VII Claims

At the outset, defendants argue they are entitled to summary judgment on plaintiff's Title VII claims because plaintiff does not advance any claims based on a status protected under that statute.

The Court agrees.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

Here, plaintiff asserts claims pursuant to Title VII for (i) "Hostile Work Environment Harassment on the basis of Age and Disability," (ii) "Age and Disability Discrimination–Disparate Treatment," and (iii) "Retaliation." (Doc. #11 at 44–48). Despite repeatedly invoking Title VII's protections, not one of plaintiff's claims is based on a status protected under Title VII's terms. Rather, plaintiff alleges only claims based on her age and disability, neither of which is protected under Title VII's plain terms. See 42 U.S.C. § 2000e–2(a)(1); Buckley v. New York, 959 F. Supp. 2d 282, 292 (E.D.N.Y. 2013). And plaintiff in no way explains how her claims could be brought pursuant to Title VII. (See generally Doc. #61).

Accordingly, defendants are entitled to summary judgment on plaintiff's Title VII claims because plaintiff does not advance any claims based on a status protected under Title VII.

## III. ADA and ADEA Claims

Defendants further argue plaintiff's remaining federal law claims brought pursuant to the ADA and ADEA are untimely.[5]

The Court agrees.

Plaintiff's ADA and ADEA claims are subject to a statute of limitations which requires a plaintiff to file a charge with the EEOC within 300 days of an alleged adverse employment action. See Saidin v. N.Y.C. Dep't of Educ., 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007). This

[5] Although defendants initially take the position that plaintiff may have a timely federal claim based on her correspondence with Lenox Hill while on leave (Doc. #47 at 7), defendants ultimately argue these on-leave communications were not discrete acts rendering plaintiff's federal claims timely (Doc. #72 at 1–2). Indeed, as detailed below, plaintiff has not identified any timely discrete act to support any of her federal law claims.

statute of limitations accrues at the time when plaintiff "knew or with the exercise of due diligence could have known that the employment action giving rise to the charge had occurred." Id. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." Nat'l R.R. Passenger Corp v. Morgan, 536 U.S. 101, 113 (2002). If plaintiff fails to file a timely charge with the EEOC, the claim is time barred. See Gomez v. N.Y.C. Police Dep't, 191 F. Supp. 3d 293, 301 (S.D.N.Y. 2016).

Here, it is undisputed plaintiff filed a charge of discrimination with the EEOC on March 25, 2022. (Doc. #65 at ¶ 82). Thus, she can only bring suit for discrete acts occurring on or after May 29, 2021.

Insofar as plaintiff's claims are based on discrete acts that occurred before May 29, 2021—such as defendants' denial of plaintiff's light duty accommodation request, alteration of her job description, or placing plaintiff on a leave of absence, all of which occurred on or before April 5, 2021—those claims are time barred. Indeed, plaintiff has failed to identify any allegedly unlawful employment action falling within the 300-day limitations period to support her claims for discrimination, retaliation, or failure to accommodate under the ADA or ADEA. See Valtchev v. City of New York, 400 F. App'x 586, 588 (2d Cir. 2010) ("The ADA [and] ADEA . . . require claimants to file a charge of discrimination or retaliation with the [EEOC] within 300 days of the discriminatory or retaliatory act."). Similarly, with respect to plaintiff's hostile work environment claims, because plaintiff did not actively work after April 5, 2021, no event contributing to the allegedly hostile work environment could have occurred within the limitations period. See Krachenfels v. North Shore Long Island Jewish Health Sys., 2014 WL 3867560, at *10 (E.D.N.Y. July 29, 2014).[6]

---

[6] Although neither party addresses this distinct standard, a hostile work environment is a continuing violation, and as such, for plaintiff's hostile work environment claims to be timely,

Plaintiff makes no meaningful argument as to the timeliness of most of her claims under the ADA and ADEA. (See generally Doc. #61). Rather, she argues only that defendants "committed timely, discrete accommodation-related acts within the limitations period." (Id. at 26).

Plaintiff highlights four such "timely, discrete accommodation related acts." (Doc. #61 at 26). The first two acts—Auletta's letter of May 17, 2021, and Zhang's letter of May 26, 2021—did not occur within the federal limitations period (i.e., on or after May 29, 2021) and thus cannot give rise to a timely claim. (Docs. ##49-18; 49-20). The third act plaintiff highlights is her June 14, 2021, submission of an updated note from her physician. (Doc. #49-24). However, plaintiff has identified no case law—and the Court is aware of none—suggesting that plaintiff's act of submitting an updated note could suffice as actionable discriminatory conduct by defendants.

This leaves only the fourth act highlighted by plaintiff: Auletta's June 24, 2021, letter, in which Lenox Hill for the second time denied plaintiff's light duty accommodation request. (Doc. #49-25). However, this letter does not render plaintiff's federal claims timely. The Second Circuit has made clear that an employer's rejection of a proposed accomodation is a "discrete act that must be the subject of a complaint to the EEOC within 300 days." Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 134–35 (2d Cir. 2003). In other words, "[o]nce a request for accommodation is made by the employee and denied by the employer, the claim has accrued and

---

some act contributing to the allegedly hostile work environment must have occurred within the applicable limitations period. See Krachenfels v. North Shore Long Island Jewish Health Sys., 2014 WL 3867560, at *10. As stated above, however, plaintiff has identified no act within the limitations period contributing to the allegedly hostile work environment.

the 300-day clock for filing with the EEOC starts." Gilani v. Teneo, Inc., 2022 WL 220087, at *8 (S.D.N.Y. Jan. 25, 2022).

Here, it is undisputed plaintiff first requested a light duty accommodation in March 2021, and provided the March 2021 note in support of that request. (Doc. #65 at ¶¶ 51–54). Lenox Hill denied plaintiff's request on April 4, 2021, when Jawin emailed plaintiff stating plainly that Lenox Hill was "unable to accommodate the light duty requirements." (Docs. ##49-17; 65 at ¶ 60). Thus, as stated above, the discrete act occurred on April 4, 2021, more than 300 days before plaintiff filed her EEOC charge on March 25, 2022, and her claim arising therefrom is time barred.

Plaintiff's renewed light duty accommodation request in June 2021, and Lenox Hill's subsequent denial of that renewed request on June 24, 2021, do not alter this outcome. This Court and others in this district have consistently held that "repeated requests for the same accommodation or requests for reconsideration of a denial of an accommodation do not restart the clock under the ADA." Ross v. New York, 2017 WL 354178, at *2 (S.D.N.Y. Jan. 24, 2017); see also Atherley v. N.Y.C. Dep't of Educ., 2024 WL 1345741, at *9–10 (S.D.N.Y. Mar. 29, 2024); Gilani v. Teneo, Inc., 2022 WL 220087, at *12; Whalen v. CSC TKR, LLC, 2011 WL 6965740, at *3–4 (S.D.N.Y. Dec. 28, 2011).[7] Thus, plaintiff's renewed request for a light duty accommodation does not change the fact that she filed her EEOC charge more than 300 days

[7] The Second Circuit has not definitively settled whether an employee's renewed accommodation request restarts the clock on the statute of limitations. See Elmenayer v. ABF Freight Sys., Inc., 318 F.3d at 135 ("[W]e do not decide what the effect would be if the employee renews the request for an accommodation."). However, the Court is persuaded by the reasoning of the district court decisions cited above that an employer's refusal to reconsider its previous denial of an accommodation request does not restart the clock on the statute of limitations.

after receiving notice on April 4, 2021, that her employer had denied the requested light duty accommodation.

Plaintiff does not so much as attempt to distinguish her renewed accommodation request from her initial request. Nor could she, as the requests were practically identical. Although her requests were supported by slightly different notes from plaintiff's physician, "[t]he reasons for plaintiff's requests and [her employer's] responses to [her] requests do not change the type of accommodation requested." Whalen v. CSC TKR, LLC, 2011 WL 6865740, at *3. Indeed, plaintiff herself recognizes that Auletta's June 24, 2021, letter represented no more than Lenox Hill's "continued insistence" that it could not accommodate her light duty request. (See Docs. ##61 at 26; 11 at ¶¶ 214, 231–32). There is thus no basis for the Court to find Lenox Hill's denial of this renewed request was an independent discriminatory act which would extend the ADA's 300-day statute of limitations period. See Durham v. Atl. City Elec. Co., 2010 WL 3906673, at *7 (D.N.J. Sept. 28, 2010) ("Plaintiff's persistence in claiming that [defendant should provide him with an accommodation] . . . amounts to nothing more than a request that [defendant] reconsider its . . . determination.").

The Court is also unpersuaded by plaintiff's argument that her federal claims are timely merely because the interactive "accommodation process" continued into the limitations period. Defendants' alleged failure to engage in the interactive process after denying plaintiff's accommodation request is "irrelevant" to the limitations inquiry. Gilani v. Teneo, Inc., 2022 WL 220087, at *9 n.17; Muckenfuss v. Tyson Fresh Meats, Inc., 581 F. Supp. 3d 1114, 1120 (N.D. Ind. 2022) (finding employer's "willingness to continue to investigate options" to accommodate plaintiff did not restart the statute of limitations). Indeed, although plaintiff purports to advance a claim under the ADA based on Northwell's failure to engage in the interactive process (Doc.

#11 at 48), no such independent cause of action exists under the ADA. See Sheng v. M&TBank Corp., 848 F.3d 78, 86–87 (2d Cir. 2017); Greenbaum v. N.Y.C. Transit Auth., 2022 WL 3347893, at *5 (2d Cir. Aug. 15, 2022) ("[T]here is no independent cause of action under the ADA . . . for a failure to properly engage in the interactive process."). Thus, to the extent plaintiff seeks to advance such a claim under the ADA, that claim is dismissed.[8]

At bottom, plaintiff has failed to identify any allegedly discriminatory action falling within the 300-day limitations period to support her federal claims. As such, her claims under the ADA and ADEA must be dismissed as time barred.

IV. State and City Law Claims

Defendants also argue they are entitled to summary judgment on plaintiff's claims under the NYSHRL, NYCHRL, and NYLL.

The Court denies as moot defendants' motion for summary judgment as to the state and city law claims.

Although neither party raises this issue, the Court has "an independent obligation to consider the presence or absence of subject matter jurisdiction sua sponte." Hunter v. McMahon, 75 F.4th 62, 66 (2d Cir. 2023). A federal court "may decline to exercise supplemental jurisdiction over a [state law] claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Having determined that defendants are entitled to summary judgment on plaintiff's federal law claims brought pursuant to Title VII, the ADA, and the ADEA, the Court no longer

8 To be clear, the Court expresses no opinion on plaintiff's claim for failure to engage in the interactive process pursuant to the NYSHRL or NYCHRL.

has original jurisdiction over any claim.[9] As such, the Court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

---

[9] The Court is unable to exercise diversity jurisdiction over the remaining state and city law claims. The notice of removal and complaint invoke only this Court's federal question jurisdiction based on plaintiff's claims pursuant to Title VII, the ADA, and the ADEA, and allege the Court has supplemental jurisdiction over the non-federal claims based on 28 U.S.C. § 1367. (Docs. ##1 at 2–3; 11 at ¶¶ 10–11). Further, plaintiff alleged both she and defendant Northwell are citizens of New York. (Doc. #11 at ¶¶ 14, 16); see St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant.").

## CONCLUSION

The motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff's claims brought pursuant to Title VII, the ADA, and the ADEA, are dismissed. Plaintiff's state and city law claims remain pending. Because the Court declines to exercise supplemental jurisdiction over those claims, they may be pursued upon remand to state court, although the Court expresses no opinion about the merits of those claims.

The Clerk is instructed to terminate the motion. (Doc. #46).

The Clerk is further instructed to remand this case to the Supreme Court of the State of New York, New York County, and close this case.

Dated: July 22, 2026
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge